United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Carlos Angarita and<br>Paula Botero-Paramo, individually<br>and on behalf of their children, C.A.<br>and D.A., Plaintiffs,<br><br>v.<br><br>Hypertoyz, Inc. and Eric Marabini<br>d/b/a Hyperpowersports,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 23-20695-Civ-Scola<br>)<br>)<br>)<br>)<br>)<br>) |

## Order Awarding Damages After Default Judgment as to Liability

Plaintiffs Carlos Angarita and Paula Botero-Paramo, individually and on behalf of their children, C.A. and D.A. (collectively the "Angaritas"), seek compensation from Defendants Hypertoyz, Inc. and Eric Marabini, doing business as Hyperpowersports (together "HyperToyz"), because Hypertoyz sold the Angaritas a defective scooter that caught fire, damaging their home and belongings. (Am. Compl., ECF No. 4) Previously, the Court adopted United States Magistrate Judge Jonathan Goodman's report (Rep. & Rec., ECF No. 38) that recommended granting the Angaritas' motion for partial default judgment (Pl.'s Mot., ECF No. 25) and entered final default judgment against Defendants as to liability. (Order, ECF No. 41.) The Court overruled the Angaritas' objection to Judge Goodman's report (ECF No. 40) requesting a jury trial on damages and instead set the matter for an evidentiary hearing which was held on March 7, 2024. After considering the record, the evidence and testimony presented at the hearing, counsel's argument, and the relevant legal authorities, the Court finds as follows.

1. **Background**

In 2018, Carlos Angarita purchased an electric scooter from Hypertoyz. For the next several years, Angarita used the scooter without issue, and he often stored it in the foyer of his family's Virginia townhome. On June 21, 2021, Angarita heard an explosion coming from the foyer. He found the scooter engulfed in flames, which quickly spread to the surrounding structure. Angarita and his wife's mother, who was also home that day, were able to escape amid the smoke and fire. But the family's rented townhome was gutted in the blaze, destroying their possessions and forcing them to relocate.

The Angaritas subsequently brought this suit alleging four causes of action, all of which Hypertoyz has been found liable for: strict liability (count one); breach of implied warranty (count two); violation of the Magnuson-Moss Warranty Act, 15 U.S.C § 2310(d)(1) ("MMWA" or "Magnuson-Moss") (count three); and negligent failure to warn (count four). (Am. Compl., 10–15). As to their damages, the Angaritas claim lost personal property, moving expenses, other incidental and consequential damages, and damages for pain and suffering, including mental anguish, expense of medical treatment, and other physical and emotional harm.

## 2. Legal Standards

After a court determines that a default judgment should be entered, it must determine the amount of the recovery that should be awarded. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004) (Cohn, J.). A court may award damages "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005) (quoting *Adolf Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d at 1544). Without a factual basis in the record, however, federal law "requires a judicial determination of damages" and a court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Coors*, 777 F.2d at 1544 (finding that "a judgment of default awarding cash damages could not properly be entered without a hearing, unless the amount claimed is a liquidated sum or one capable of mathematical calculation").

Plaintiffs bear the burden of proving these damages by the preponderance of the evidence. This standard "requires the Court to believe the existence of a fact is more probable than its nonexistence before it may find for the party who has the burden to persuade the Court." *Gulf Bldg. LLC v. Philadelphia Indem. Ins. Co.*, 2023 WL 5617358, at *35 (S.D. Fla. Aug. 30, 2023) (Ruiz, J.) (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993)). It "is not a high standard." *Id.* (citing *United States v. Askew*, 193 F.3d 1181, 1193 (11th Cir. 1999)). Nor will "uncertainty or difficulty in proving the amount of damages … bar recovery." *Storfer v. Guarantee Tr. Life Ins. Co.*, 666 F.3d 1277, 1280 (11th Cir. 2012) (citing *Berkshire Mut. Ins. Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967) and *Centex–Rooney Const. Co. v. Martin Cnty.*, 706 So.2d 20, 28 (Fla. 4th DCA 1997)).

### 3. Hearing Testimony

All four members of the Angarita family testified as to the damages that resulted from the fire caused by the defective scooter.

### A. Carlos Angarita's Testimony

Carlos is 54 years old and lives in Sterling, Virginia and works in construction.

On the day of the fire, Carlos was working at home and heard an explosion in the basement. He ran to the basement and saw fire like a torch coming from the area where he stored the scooter. He went back upstairs to retrieve a fire extinguisher but had trouble removing the pin from the extinguisher. He became covered in smoke and felt the heat from the flames. He then threw down the extinguisher and ran out the back of the townhouse. He was covered in black soot from the exposure to the smoke and fire.

The fire spread rapidly, and all their belongings were destroyed. His daughters were very upset, and he felt guilty about buying the scooter which caused the fire.

After the fire was extinguished, he went back into the house and it was completely destroyed. He went back to see if anything of his daughters' belongings had survived: all was lost.

His mother used to paint and several of her oil paintings were destroyed. Other artwork by a Colombian artist was also destroyed. All the furniture was also destroyed, including antique furniture.

Carlos created a list of all the items that were lost in the fire for his insurance company. The total of all the items was $251,916. The family received insurance proceeds totaling $32,000 which was the policy limit. Thus, the net loss for those items was $219,916.

Later, the family realized that there were other items that were lost in the fire that they had neglected to put on the list. Those items had a total economic value of $30,000 to $40,000.

Many items had great sentimental value if not economic value.

Carlos believes the fire has impacted him very negatively. He used to be a confident person and now his is insecure and paranoid. He has an excess number of smoke detectors and sensors. When he leaves the house, he unplugs every electronic device.

One time, he was testing the smoke alarm and the family became freaked out by the alarm and was very upset at him.

Carlos has also seen changes in his family. Prior to the fire, they had a happy, jovial life. After the fire, the family is much less relaxed and prone to argument and discord. They are all more sensitive and irritable.

After the fire, Camilla's hand shakes from nerves and her grades at school have suffered and she is still struggling both in school and socially. She is less affectionate with Carlos and withdrawn.

### B. Paula Botero-Paramo's Testimony

Paula Botero-Paramo is 54 years old and works as a stroke nurse in Virginia.

On the day of the fire, she was at work and her daughter Camilla called to say the house was on fire. Camilla turned on the Facetime feature and showed her the fire.

Paula left immediately to return home and arrived about 15 minutes later. When she first arrived at the scene, there were several firetrucks already there. Paula got close to house but was restrained by the firefighters. She breathed in smoke and for a week she was coughing up soot and soot came out when she blew her nose.

Her mother was at a neighbor's house when Paula arrived at the scene. Camilla and Daniela were in the cul-de-sac across the street which is where the family had taught them to go if there were a fire.

Some neighbors bought them pajamas and the Red Cross brought them some things. Other neighbors helped with drinks and food for their dog. For the first week, they stayed at Paula's friend's house. They then stayed two weeks in a hotel and finally moved into a small, two-bedroom apartment. It was half the size of their townhouse and was an extra thirty-minute commute.

Paula's brother picked up her mother and she has been living with different siblings since the fire. For the first year after the fire, they did not see the grandmother. The apartment was on the third floor with no elevator, and she would not be able to get in and out of the apartment due to her age and medical conditions. Not having Paula's mother around had a negative impact on the family, particular the girls. Her mom helped raise the girls and lived with them for ten years and was very close to the girls.

Paula and Carlos were married in Colombia and had a large marriage. The received many wedding gifts including silver and artwork. She had saved her wedding dress for her girls to use, kept the christening gown they had used, family bible, scrapbook, artwork of the girls, and certificates and diplomas of the girls, but the fire destroyed them.

Both girls had more severe reactions to cold and flus after the fire but Camilla was more greatly affected. She developed a twitch and was diagnosed

with post-traumatic stress disorder. It took a long time to get her therapy because of COVID and Camilla's initial resistance to therapy. Prior to the fire, Camilla was sociable but after the fire she shut down. She just didn't care about school, friends, or her appearance.

Carlos was greatly affected by the fire. He blamed himself for buying the scooter.

They had to replace passports, driver's licenses, key fobs, and medications which took and enormous amount of time and caused a great amount of stress. This was still during COVID, so it was difficult to accomplish these tasks.

As a mother, she has been affected by the struggles of her daughters. In some ways it has been frustrating because they are now adults, and she can't order them to go to therapy.

### C. Camilla Angarita's Testimony

Camilla is twenty-one-years old and had just graduated from high school prior to the fire. She is in college now, studying nursing.

In high school she was involved in many activities, including student government and was very socially active.

At the time of the fire, Camilla was in the car with Daniela when her cousins and grandmother came running out of the house yelling, "fire!" Camilla moved the car across the street and saw her grandmother and the dog running back into the house. Camilla ran back into the house. Her dog was just sitting on the stairs so Camilla grabbed the dog. Her grandmother was looking for her medicine and some photos, but Camilla pulled her out of the house. She then realized she did not see her dad and thought he was still in the house. She started back into the house to try to find him. She had trouble seeing and it was very hot. She breathed in the smoke and when she exited, she was covered in smoke and soot. She hurt her foot jumping over the railing and finally exited the house and saw her dad was safely outside.

Nothing in her room survived the fire. In addition to her clothing and other personal effects, she had three memory boxes with items that wanted to save for posterity such as letters, Broadway ticket stubs, kindergarten uniform, and photos.

Camilla suffered greatly after the fire. She did poorly in school and was placed on academic probation. She felt guilty being away at school and leaving her sister behind. She did not feel like making new friends and her first year was very difficult. She has had an easier time socially more recently.

She developed a twitch after the fire and therapy was recommended. She resisted therapy for a while but has now been attending therapy regularly. She was diagnosed with PTSD. She is currently on anti-depressant medications and

has had trouble sleeping. She has recurring nightmares of Daniela or her mom being hurt. She has also been prescribed medication to help her sleep. She did not have these problems before the fire.

In the college dorm, students would pull the fire alarm as a prank which would act as a trigger for her and caused her great distress. Although the other family members think the incident has made the family more distant from each other, Camilla believes it has brought them closer.

### D. Daniela Angarita's Testimony

Daniela Angarita is nineteen-years old and was sixteen-years old at the time of the fire.

On the day of the fire, she and her sister were home. Her dad was working in the house and her grandmother and two cousins were also in the house. Her grandmother lived with the family all of Daniela's life and took care of the girls while her parents worked.

At the time of the fire, she and her sister were playing in the driveway. There were sitting in the car and she smelled smoke. She first thought someone was having a bar-b-que but then her two cousins and her grandmother came running out of the garage. Her grandmother needed a cane or walker, and she ran out of the house without either.

Daniela got out of the car and saw the fire and smoke. She ran to other neighbors to warn them of the fire and called 911.

Daniela realized her wallet was inside the house so she ran up to the house to see if she could retrieve her wallet from the foyer. As she got close to the door, she realized the door was gone. While she was standing on the landing, the window next to her exploded. She was fortunately not cut, but her arm was covered in soot. She ran away quickly back to safety.

Her mom was at work and Camilla Facetimed her to let her know and showed her mom the fire. Her mom then returned home from work.

The first night after the fire, they stayed at the home of her mom's friend.

It was summer and very hot outside and Daniela was wearing a bathing suit and flip flops. All her other clothes were destroyed in the fire.

Daniela believes that her health has declined, and she suffers more greatly when she gets the cold or the flu. She now needs inhalers which she never needed before the fire.

Daniela lost her trophies and medals and awards, jewelry from her grandmother, stuffed animals, special blanket, ornament with her handprint, yearbooks and many other items with great sentimental value.

Since the fire, her grandmother no longer lives with them. Her mom has other siblings and her grandmother has been living mostly with the other

siblings. After living with her grandmother for more than ten years, she has only seen her infrequently since the fire.

Daniela has seen changes to her dad since the fire. He only cried once before the fire when his mother died but he has felt very guilty and sorrowful about the fire and it has affected him greatly in a negative way.

Camilla had a tick for a long time, has had insomnia and PTSD and every time they see a firetruck, she and her sister are forced to relive the memories of the fire.

### 4. Findings

The Court finds that the value of the personal items lost in the fire is as follows:

a. $219,916 for the items set forth on the list provided to their insurance company ($251,916 minus the $32,000 received under the terms of the policy). Of this, Carlos and Paula will each receive 50% or $109,958;
b. $40,000 for additional items that the family realized had been destroyed. Of this Carlos and Paula will each receive 50% or $20,000;
c. Paula's personal items of great sentimental value such as her wedding dress, Christening gown, scrapbook and children's artwork: $100,000;[*]
d. Carlos's personal items of great sentimental value such as his mother's artwork: $50,000;
e. Camilla's personal items of great sentimental value such as her memory boxes: $25,000;
f. Daniela's personal items of great sentimental value: $10,000.

The Court further finds that each of the four family members experienced an 'impact' for purposes of allowing for non-economic damages and each has suffered a permanent injury.

For the purposes of future pain and suffering, inconvenience, and loss of enjoyment of life, each family member has the following life expectancies:

Carlos has life expectancy of 25.06 years;
Paula has life expectancy 28.72 years;
Camilla has life expectancy of 59.44 years;
Daniela has life expectancy of 61.38 years.

---

[*] "It is often impossible to place what is current market value on such articles but the law does not contemplate that this be done with mathematical exactness. The law guarantees every person a remedy when he has been wronged. If the damage is to personal property as in this case, it may be impossible to show that all of it had a market value. In fact, it may be very valuable so far as the owner is concerned but have no value so far as the public is concerned. It would be manifestly unfair to apply the test of market value in such cases." *Florida Public Utilities Co. v. Wester,* 150 Fla. 378, 381–82 (Fla. 1942).

Based on the credible testimony and evidence presented, the Court finds the Angaritas have established, by a preponderance of the evidence, a legitimate basis for the following damages amounts:

- In favor of Carlos Angarita:

  $189,958 in economic damages;

  $150,000 for pain, suffering, inconvenience, and loss of enjoyment of life in the past;

  $250,000 for pain, suffering, inconvenience and loss of enjoyment of life in the future;

  **$589,958** Total damages for Carlos Angarita


- In favor of Paula Botero-Paramo:

  $229,958 in economic damages;

  $75,000 for pain, suffering, inconvenience, and loss of enjoyment of life in the past;

  $280,000 for pain, suffering, inconvenience, and loss of enjoyment of life in the future;

  **$584,958** Total damages for Paula Botero-Paramo


- In favor of Camilla Angarita;

  $50,000 in economic damages;

  $450,000 for pain, suffering, inconvenience and loss of enjoyment of life in the past;

  $750,000 for pain, suffering, inconvenience, and loss of enjoyment of life in the future;

  **$1,250,000** Total damages for Camilla Angarita


- In favor of Daniela Angarita:

  $10,000 in economic damages;

  $150,000 for pain, suffering, inconvenience, and loss of enjoyment of life in the past;

  $350,000 for pain, suffering, inconvenience, and loss of enjoyment of life in the future;

  **$510,000** Total damages for Daniela Angarita

**5. Conclusion**

Accordingly, the Court awards against Defendants Hypertoyz, Inc. and Eric Marabini, doing business as Hyperpowersports, jointly and severally, and in favor of Carlos Angarita a total of **$589,958** in compensatory damages; Paula Botero-Paramo a total of **$584,958** in compensatory damages; Camilla Angarita a total of **$1,250,000** in compensatory damages; and Daniela Angarita a total of **$510,000** in compensatory damages. A separate order entering final judgment will follow.

The Court directs the Clerk to **mail and email copies of this order** to any Defendant who has not appeared at the addresses listed below.

The Clerk is directed to administratively **close** this case.

**Done and ordered** in Miami, Florida, on March 8, 2024.

_____
Robert N. Scola, Jr.
United States District Judge

*Copies via U.S. mail to:*
**Hypertoyz, Inc.**
c/o Eric Marabini, Registered Agent
1726 NW 20th Street
Miami, Florida 33142

**Eric Marabini, dba Hyperpowersports**
888 Biscayne Blvd., Apt. 906
Miami, Florida 33132-1510

**hypertoyz11@gmail.com**

**info@suttonlawgroup.com**